# In the United States Bankruptcy Court for the Southern District of Georgia
## Savannah Division

In the matter of: )
)
RITA M. RAINES, ) Chapter 7 Case
)
             *Debtor.* ) Number <u>08-41972-EJC</u>
)
_____ )
) **FILED**
SABER SECURITY & ) Lucinda B. Rauback, Clerk
INVESTIGATIONS, LLC, ) United States Bankruptcy Court
) Savannah, Georgia
) By dreese at 3:34 pm, Nov 17, 2014
             *Movant*, )
)
v. )
)
RITA M. RAINES and )
JAMES L. DRAKE, JR., TRUSTEE, )
)
             *Respondents.* )
_____ )

### OPINION AND ORDER GRANTING MOTION FOR STAY RELIEF

Before the Court is the Motion for Stay Relief ("<u>Motion</u>") (dckt. 66) filed by Saber Security & Investigations, LLC ("<u>Movant</u>" or "<u>Saber</u>"). Saber requests that the stay be lifted so that it can add Rita M. Raines ("<u>Debtor</u>") as a party defendant in Civil Action File Number 13-1-10200-52 now pending in the Superior Court of Cobb County, Georgia before the Honorable A. Greg Poole. The Court held hearings on the Motion on July 28, 2014 and August 27, 2014. At the conclusion of the August 27 hearing, the Court took the matter under advisement. For the reasons set forth below, the Court grants the Motion.

AO 72A
(Rev. 8/82)

I.   JURISDICTION

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference signed by Chief Judge Anthony A. Alaimo on July 13, 1984. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(G) (providing that core proceedings include "motions to terminate, annul, or modify the automatic stay"). In accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure, the Court makes the following Findings of Fact and Conclusions of Law.

II.  FINDINGS OF FACT

A.   Procedural History

On October 14, 2008, Debtor filed her Chapter 13 petition. (Dckt. 1.) On January 26, 2009, the Court confirmed Debtor's plan. (Dckt. 32.) On March 3, 2014, the Chapter 13 trustee issued a notice to Debtor that she had completed all payments required under her plan. (Dckt. 51.) On March 27, 2014, the clerk of the bankruptcy court issued a notice, informing parties in interest that a discharge would be entered unless an objection based on 11 U.S.C. § 522(q) was submitted within thirty days. (Dckt. 54.)

Before a discharge was entered, however, Debtor converted her case to Chapter 7 as a matter of right under 11 U.S.C. § 1307(a) on April 22, 2014. (Dckt. 56.) On April 25, 2014, Debtor amended her Schedule F to list Saber as the holder of a disputed unsecured nonpriority claim. (Dckt. 56.)

On June 18, 2014, Saber filed the stay relief motion now before the Court. (Dckt. 66.) Then, on July 21, 2014, Saber filed the Complaint to Determine Dischargeability of Debt (dckt. 70), which seeks a Court determination that its unliquidated claim against Debtor arising out of her alleged misconduct during and after her employment by Saber is excepted from discharge under 11 U.S.C. § 523(a)(2), (4), and (6). To establish Debtor's liability in the first instance, Saber seeks stay relief to proceed with the litigation in the Superior Court of Cobb County "and to satisfy any judgment of damages awarded to [Saber] against [Debtor]." (Dckt. 66, at 3.)

The Court held a hearing on the Motion on July 28, 2014, which was continued to August 27, 2014 so that the parties could brief the issues and present evidence. Both parties submitted briefs before the August 27 hearing. At the hearing, Richard Poncinie (Saber's co-founder and owner) and Debtor testified, and the parties stipulated to the admission into evidence of all exhibits to their briefs as well as the record in the Cobb County litigation. (Dckt. 78, at 4.)

B.  The August 27 Hearing[1]

During 2007, Richard Poncinie and Erica Lumpert formed Saber Security & Investigations, LLC, which provides security officers and other investigative services to its clients. (Dckt. 78, at 51.) Poncinie owned a 49% interest and Lumpert owned a 51% interest

---

[1] The following facts were either proven or are the proper subject of judicial notice.

in Saber. Saber's headquarters is in Marietta, Georgia. Shortly after Debtor filed bankruptcy in 2008, Saber hired her to be the Director of Operations for its Savannah office. Lumpert and Debtor had worked together previously in the Georgia operation of a security services company based out of New York. (Dckt. 78, at 54.)

In 2012, Poncinie became concerned about Lumpert's supervision of Saber's financial records. He was especially troubled by certain expenses that Saber was paying on Lumpert's behalf that he believed were improper. As a result, Poncinie hired HLB Gross Collins ("HLB") to audit Saber's accounting records. Based on HLB's report, Poncinie demanded in October 2012 that Lumpert explain the whereabouts of over a quarter of a million dollars. Poncinie also testified that the report revealed $60,182.47 of "unsupported payments" to Debtor.[2] (Dckt. 78, at 98.) In response to these accusations by Poncinie, Lumpert (and perhaps Debtor) began planning an exit strategy.

In November 2012, Lumpert formed Security Associates of Coastal Georgia, LLC ("Security Associates"). Yet, Lumpert did not withdraw as a member of Saber until July 5, 2013. Debtor left her employment with Saber within a week of Lumpert's departure and immediately was employed by Security Associates. (Dckt. 78, at 221.) According to

---

[2] Poncinie also claims that Debtor had a water cooler delivered to her home for personal use that Saber paid for. In response, Debtor testified that the water company offered a special if two water coolers were ordered at the same time and that she asked to be billed separately for the water cooler delivered to her home; however, she could never get the company to separately bill for the water coolers. Saber received the other water cooler.

Poncinie, right after Lumpert withdrew from Saber, Debtor told Saber's employees to meet Lumpert at another location. At that meeting, it is alleged that Lumpert told Saber's employees that Saber had gone out of business, that she had started a new company called Security Associates (which had obtained Saber's contracts), and that they all could work for Security Associates now. (Dckt. 78, at 100–01.)

On November 25, 2013, Saber filed a complaint against Lumpert and Security Associates in the Superior Court of Cobb County. On December 31, 2013, Saber amended its complaint to name Debtor and assert claims against her. The superior court has not yet ruled on Saber's motion to add Debtor as a party to that litigation.

In the superior court, Saber seeks to recover from the defendants, including Debtor, all past and future damages occasioned by the defendants' alleged breach of loyalty, breach of contract, tortious interference with business and contractual relations, misappropriation of trade secrets, negligent misrepresentation, trespass, fraud, civil conspiracy, civil RICO violations, unjust enrichment, computer trespass, computer theft, and computer invasion of privacy.[3] The amended complaint also seeks to enjoin the defendants from soliciting Saber's customers, further disclosing confidential information, further misappropriating trade secrets, and for the return of all of Saber's property.

---

[3] As one example of the alleged misconduct of Debtor, Poncinie claims that, during the time leading up to her exit from Saber, Debtor submitted a below-cost bid on Saber's behalf to damage its reputation. (Dckt. 78, at 118.) Debtor denies that she had such an intent and argues that Lumpert had final say on the amount that was bid.

Poncinie argues that, thus far, the defendants in the Cobb County litigation have been evasive in their responses to discovery requests and have engaged in a campaign to delay the progress of the lawsuit, which Debtor denies. Lumpert has funded Debtor's legal "defense" in both bankruptcy court and during the course of responding to discovery as a nonparty in the superior court. Consequently, the same law firm currently represents both Lumpert and Debtor.

Debtor suffers from serious health problems that will require inpatient procedures in the near future. (Dckt. 78, at 167–68.) Some of the medications that she takes will make travel particularly onerous. She is also the primary caregiver of her mother who suffers from dementia. (Dckt. 78, at 171.) Debtor and her mother live in the Savannah area, and Debtor's siblings live in Atlanta. She and her mother travel once every other weekend to Beaufort, South Carolina. (Dckt. 78, at 174.)

III. CONCLUSIONS OF LAW

Section 362(d)(1) of the Bankruptcy Code permits a bankruptcy court to terminate, annul, modify, or condition the automatic stay for "cause." The party opposing stay relief has the ultimate burden of disproving the existence of "cause." 11 U.S.C. § 362(g)(2). However, the movant has the initial burden to show that "cause" exists. Section 362(d)(1) does not define "cause," so a bankruptcy court must determine "cause" based on the totality of the circumstances. *In re George*, 315 B.R. 624, 628 (Bankr. S.D. Ga. 2004)

(Davis, J.).

"As a general rule, the filing of a bankruptcy petition operates to stay litigation involving prepetition claims against a debtor." *Egwineke v. Robertson (In re Robertson)*, 244 B.R. 880, 882 (Bankr. N.D. Ga. 2000). Saber's claims against Debtor arose after she filed her Chapter 13 petition. Nevertheless, by operation of § 348 of the Bankruptcy Code, the effect of her conversion to Chapter 7 is that the date of the order for relief is now the date of the conversion. Consequently, the automatic stay of § 362 now applies to the claims raised against her in the amended complaint in the Cobb County litigation.

A. Standard for Stay Relief

To determine whether to lift the automatic stay so that a party may continue litigation in another forum, most courts balance the hardship to the creditor if the creditor is not allowed to proceed with the lawsuit, against the potential prejudice to the debtor, the debtor's estate, and other creditors. *E.g., In re Carraway Methodist Health Sys.*, 355 B.R. 853, 854 (Bankr. N.D. Ala. 2006). In applying this balancing test, courts have considered numerous factors, such as:

(1) whether relief would result in a partial or complete resolution of the issues;
(2) lack of any connection with or interference with the bankruptcy case;
(3) whether the other proceeding involves the debtor as a fiduciary;
(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
(5) whether the debtor's insurer has assumed full responsibility for defending it;
(6) whether the action primarily involves third parties;

> (7) whether litigation in another forum would prejudice the interests of other creditors;
> (8) whether the judgment claim arising from the other action is subject to equitable subordination;
> (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
> (10) the interests of judicial economy and the expeditious and economical resolution of litigation;
> (11) whether the parties are ready for trial in the other proceeding; and
> (12) impact of the stay on the parties and the balance of harms.

*In re R.J. Groover Constr., L.L.C.*, 411 B.R. 460, 464 (Bankr. S.D. Ga. 2008) (Davis, J.).

Other courts formulate the balancing test with only three factors:

> (1) whether any great prejudice to either the bankruptcy estate or the debtor will result from prosecution of the lawsuit;
> (2) whether the hardship to the non-debtor party by continuation of the automatic stay considerably outweighs the hardship to the debtor; and
> (3) whether the creditor has a probability of success on the merits of his case.

*Robertson*, 244 B.R. at 882; *accord In re Dallas*, No. 10-12141, 2011 WL 6101832, at *2 (Bankr. S.D. Ga. Nov. 29, 2011) (Barrett, J.). In addition, although a more convenient forum is not one of the enumerated grounds for relief from stay in § 362(d), the legislative history of the section suggests that such a forum is cause under § 362(d)(1):

> [I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere.

*In re Johnson*, 153 B.R. 49, 51 (Bankr. D. Idaho 1993) (quoting S. Rep. No. 989, 95th Cong., 2d Sess. 50, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5836).

B.  The Parties' Arguments

To summarize, Saber argues that the bankruptcy estate will suffer no prejudice if Saber is allowed to proceed with the lawsuit because the Chapter 7 trustee has already filed his report that this is a no-asset case. *See Robertson*, 244 B.R. at 882. Furthermore, Saber argues that lifting the stay will not greatly prejudice Debtor because she will only have to travel to Cobb County for trial "one time" and that trip "can be made by automobile in four to five hours." (Dckt. 75, at 5.) Saber further argues that the deposition of Debtor could be taken in Savannah and not litigating in Cobb County would actually prejudice Debtor by causing her to incur additional fees for the attorneys who are currently representing her in Cobb County to travel to Savannah to defend her in the bankruptcy court.

Additionally, Saber contends that not lifting the stay would greatly prejudice it by derailing the litigation it has been pursuing for over eight months. Moreover, it argues that Debtor converted her case to Chapter 7 for the sole purpose of preventing Saber from moving forward with its lawsuit.

Finally, Saber argues that the Court should lift the stay and exercise discretionary abstention under 28 U.S.C. § 1334(c)(1) to delay hearing the dischargeability adversary until the state court determines Debtor's liability under state law. In support, Saber cites *PrimeSouth Bank v. Johnson (In re Johnson)*, No. 10-02014, 2010 WL 2179616 (Bankr. S.D. Ga. May 25, 2010) (Dalis, J.), in which the bankruptcy court granted such relief under

similar facts to this case.

In response, Debtor argues that lifting the stay would greatly prejudice her because she would have to take time off from work and travel across the state in order to defend herself in the Cobb County litigation, which she argues she cannot afford. Furthermore, Debtor argues that even if Saber obtained a judgment against her in Cobb County, Saber would still be required to litigate the dischargeability of that judgment in this Court because the bankruptcy court has exclusive jurisdiction to determine the dischargeability of debts under Bankruptcy Code § 523(a)(2), (4), and (6). As a result, Debtor argues that granting stay relief would not result in a complete resolution of the issues.

Next, Debtor contends that there are two less burdensome alternatives to lifting the stay. First, both the validity and dischargeability of Debtor's debt can be determined by this Court. Second, Saber can litigate its claim against Lumpert in state court without Debtor being a party to that lawsuit. If Lumpert prevails in the Cobb County litigation, then it follows that Debtor will not be liable due to the claims against her being based on assisting Lumpert.

Moreover, Debtor argues that the twelve factors from *In re RJ Groover* militate in favor of maintaining the stay. Debtor emphasizes that she does not have insurance coverage to cover her costs to defend against Saber's claims in the Cobb County litigation

and that Saber has not shown its entitlement to injunctive relief in any event.

C. <u>Application of the Factors</u>

Based on the analysis below, the Court concludes that Saber carried its initial burden that cause exists. Therefore, the burden is on Debtor to disprove the existence of cause. *See Overhead Door Corp. v. Allstar Bldg. Products, Inv. (In re Allstar Bldg. Products, Inc.)*, 834 F.2d 898, 900 (11th Cir. 1987). Based on the totality of circumstances, the Court concludes that Debtor failed to carry her burden and the stay will be lifted as a result.

The Court is mindful of its task to balance the hardship to Saber if it is not allowed to proceed in the Cobb County litigation with Debtor as a party, against the potential prejudice to Debtor, Debtor's estate, and other creditors. To begin with, as Saber correctly points out and Debtor does not dispute, granting stay relief will not result in any prejudice to Debtor's Chapter 7 bankruptcy estate. *See Robertson*, 244 B.R. at 882. Furthermore, as Debtor's counsel conceded at the August 27 hearing, Debtor's other creditors will not suffer any prejudice by the litigation proceeding in Cobb County. (Dckt. 78, at 49.) Therefore, what remains is for the Court to balance the hardship to Saber against the potential prejudice to Debtor.

The Court will now address each of the twelve factors from *In re R.J. Groover*.

Regarding the first factor, lifting the stay would result in a complete resolution of Debtor's liability under state law. But if Saber prevails in that action, this would not be a complete resolution because Saber would need this Court to determine that the debt was nondischargeable before it could collect on any judgment against Debtor. Overall, this factor is neutral. The third factor (whether the other proceeding involves the debtor as a fiduciary); the eighth factor (whether the judgment claim arising from the other action is subject to equitable subordination); and the ninth factor (whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor) do not apply in this case. The parties do not appear to be ready for trial. As a result, the eleventh factor weighs slightly in favor of not lifting the stay.

Nevertheless, the overwhelming weight of the *In re R.J. Groover* factors favor lifting the stay. Due to the litigation's lack of any connection to the bankruptcy case, the second factor weighs in favor of lifting the stay. The fourth factor also weighs heavily in favor of lifting the stay because the superior court has relative expertise in adjudicating the Georgia state law causes of action raised in the complaint and has the ability to accommodate Saber's jury trial demand without additional delay. The fifth factor, whether the debtor's insurer has assumed full responsibility for defending it, does not at first glance apply in this case. However, the Court agrees with Saber that Lumpert appears to have a continuing incentive (albeit with no obligation) to fund Debtor's defense in the Cobb County litigation; therefore, to the extent it applies, this factor weighs slightly in favor of granting stay relief.

*See In re Dallas*, 2011 WL 6101832, at *2 ("[T]he cost of defending, alone, is not a 'great prejudice.'" (citing *In re R.J. Groover*, 411 B.R. at 479)).

Although Saber may contend that Debtor is indispensable to the Cobb County litigation, this dispute is mainly between Poncinie (acting through Saber) and Lumpert, individually and as the sole owner of Security Associates. Consequently, the sixth factor weighs only slightly in favor of lifting the stay. The seventh factor weighs in favor of lifting the stay because the litigation continuing in Cobb County will not prejudice the rights of other creditors. The tenth factor, the interests of judicial economy, weighs heavily in favor of lifting the stay. The Cobb County litigation has been pending since November 2013 and the judge presiding over the case has made several preliminary rulings. The expeditious and economical resolution of the litigation will be served by Lumpert and Debtor's liability (or lack thereof) being established in the same forum.

Under the facts and circumstances of this case, the twelfth factor—the impact of the stay on the parties and the balance of harms—is the most important of the twelve factors and weighs in favor of lifting the stay. The Court recognizes that responding to discovery and defending the lawsuit will not be easy for Debtor in light of her health problems and her responsibilities as a caregiver for her mother. However, if the Court denied stay relief and Saber chose to continue the Cobb County litigation against Lumpert and Security Associates, Debtor would still have to respond to respond to discovery as a nonparty

and would likely be required to appear at the trial in Cobb County as a witness. The automatic stay is not violated by compelling a debtor to comply with discovery requests or testify as long as the underlying action is not against the debtor. *See Groner v. Miller (In re Miller)*, 262 B.R. 499, 503 (B.A.P. 9th Cir. 2001); *Pride Family Brands, Inc. v. Carls Patio, Inc.*, No. 12-21783, at *3–4 (S.D. Fla. Aug. 29, 2013); *Kovacs v. Koot*, No. 05-23125-CIV, 2007 WL 604927, at *4 (S.D. Fla. Feb. 22, 2007).

On balance, maintaining the stay would cause more harm to Saber than any additional harm to Debtor caused by being a defendant rather than a nonparty in the Cobb County litigation. *See Davis v. Day (In re Day)*, No. 03-21443, 2004 WL 2191632, at *3 (Bankr. S.D. Ga. Jan. 29, 2004) (Davis, J.) ("Courts have regarded the opportunity to litigate the issue of liability as a significant right which cannot be easily set aside, despite the existence of a bankruptcy proceeding."). Saber has already experienced lengthy delays in obtaining a determination of its rights under state law. If stay relief is denied and Saber brought the same claims in bankruptcy court, the district court's referral of Debtor's case would need to be withdrawn so that Saber could receive the jury trial it has already demanded in Cobb County.

Regarding the three-part balancing test recited above, the first two factors have already been examined in the context of the twelve-factor balancing test, leaving only the third factor to be considered. At this stage of the litigation, a determination of whether Saber

has "a probability of success on the merits" in the Cobb County litigation would be dubious at best. On one hand, as Debtor's counsel points out, all of Saber's claims appear to be derivative of its claims against Lumpert. Debtor presented coherent explanations for why the water cooler was delivered to her home and why Saber had written checks to her out of the operating account (to pay temporary employees in cash at the end of events). Saber presented no evidence and could point to none to refute her testimony. However, on the other hand, Saber has not had the benefit of meaningful discovery against Debtor, which may result in more evidence of culpable conduct.[4] Overall, I find this factor neutral regarding whether stay relief should be granted. *See In re Dallas*, 2011 WL 6101832, at *4 (finding that the probability of success on the merits prong was neutral where the debtor did not allege that the litigation was frivilous).

In closing, the Court notes that it is persuaded by the reasoning of Judge Dalis in *PrimeSouth Bank v. Johnson (In re Johnson)* and points to that case as further support for the result in this case. *Johnson*, 2010 WL 2179616, at *2 (granting creditor's motion for stay relief and motion to abstain from moving forward with a dischargeability adversary proceeding because equitable factors favored abstention and a determination of the debtor's liability by the superior court).

---

[4] Even if Saber obtains a judgment against Debtor in the Cobb County litigation, it has the burden to prove that its debt is excepted from discharge, and exceptions from discharge are narrowly construed in favor of debtors. *See Schweig v. Hunter*, 780 F.2d 1577, 1579 (11th Cir. 1986), *abrogated on other grounds, Grogan v. Garner*, 498 U.S. 279 (1991) (establishing that preponderance of the evidence standard rather than clear and convincing standard applies in actions under 11 U.S.C. § 523(a)).

ORDER

Cause exists for lifting the stay under 11 U.S.C. § 362(d), and the circumstances of this case warrant abstention under 11 U.S.C. § 1334(c)(1) as to Debtor's liability for certain debts under Georgia law. It is therefore ORDERED that Saber's Motion (dckt. 66) is GRANTED and the automatic stay is modified to the extent that Saber may seek to add Debtor as a party defendant in Civil Action No. 13-1-10200-52 in the Superior Court of Cobb County, Georgia, fully involve Debtor in discovery matters relating to that case, and proceed to a final nonappealable judgment.

As the Court will issue by separate order in the related adversary proceeding, it is further ORDERED that this Court shall stay consideration of the issues in Adversary Proceeding No. 14-04039 until the completion of the superior court case described above against Debtor.

Dated at Savannah, Georgia, this 17th day of November, 2014.

Edward J. Coleman, III
United States Bankruptcy Judge
Southern District of Georgia